FILED

November 4, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:04 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| PAMELA CARGILE | ) | Docket No.: 2015-06-0034 |
| Employee, | ) | |
| v. | ) | State File Number: 60971-2014 |
| HCA PHYSICIANS SERVICE | ) | |
| Employer, | ) | Judge Dale Tipps |
| And | ) | |
| ACE AMERICAN INS. | ) | |
| Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Pamela Cargile, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is the compensability of Ms. Cargile's bilateral arm injury. The central legal issue is whether Ms. Cargile suffered a gradual injury arising primarily out of and in the course and scope of her employment. For the reasons set forth below, the Court finds Ms. Cargile is entitled to a medical causation examination and, if causation is established, treatment.

### History of Claim

Ms. Cargile is a fifty-eight-year-old resident of Rutherford County, Tennessee. (*See* T.R. 1 at 1.) She testified she worked for Perot Systems prior to working for HCA. While at Perot, she developed carpal tunnel syndrome, had surgery on both arms, and settled her workers' compensation claim with open future medical benefits. When she began working for HCA in 2005, her hands were fine, and she had no trouble typing and doing her job.

Ms. Cargile held several jobs at HCA, most of which involved a significant amount of typing and computer work. She began having problems with her hands and went to an orthopedic physician, Dr. Robert Lowe. He diagnosed a cervical condition and performed neck surgery in 2013. She returned to work in October 2013, and her hand condition worsened to the point she could barely type. She repeatedly reported the

1

problem to her team leader. Ms. Cargile told her manager she had a doctor's appointment for her hands scheduled with Dr. Jason Haslam for July 24, 2013. HCA terminated Ms. Cargile's employment on July 17.

After her July 24 visit with Dr. Haslam, Ms. Cargile notified HCA's carrier of her claim for workers' compensation claim. The adjuster, Suzanne Baker, took three months to investigate the claim because Ms. Cargile had difficulty recalling her prior medical providers. HCA eventually provided a panel of physicians, but denied the claim before Ms. Cargile received any medical treatment.

In addition to the Petition for Benefit Determination (PBD) in this case, Ms. Cargile filed a Request for Assistance with the Bureau to see if Perot would provide treatment under the open medical benefits provided in her prior claim. Perot's carrier sent her to Dr. Douglas Weikert for evaluation. Dr. Weikert examined Ms. Cargile on December 8, 2014, for complaints of pain, swelling, and weakness in both hands. He noted she had cubital tunnel symptoms, right-thumb CMC joint pain, and right medial epicondylar pain. He did not feel she had carpal tunnel syndrome and stated: "I told her that it would be difficult to specify [work] as a contributor or a primary cause for the three conditions described above. I would consider this as a new problem not related to her original pain and not related to her work specifically." (Ex. 4.)

Dr. Steven Graham performed EMG and nerve conduction studies on August 1, 2014. He found Ms. Cargile's results to be abnormal and suggestive of carpal tunnel syndrome. (Ex. 5.)

Ms. Cargile subsequently sought treatment on her own with both Dr. David West and Dr. Brant Bell. Ms. Cargile saw Dr. West on April 27, 2015, for hand pain, tingling, and numbness. She told him the symptoms began two years earlier. Dr. West noted swelling and tenderness, along with positive Phalen's and Tinel's signs. He diagnosed carpal tunnel syndrome and said Ms. Cargile would benefit from release surgery. (Ex. 3.) She continues to treat with Dr. Bell.

Ms. Cargile filed a PBD seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Ms. Cargile filed a Request for Expedited Hearing, and this Court heard the matter on October 27, 2015. At the Expedited Hearing, Ms. Cargile asserted she is entitled to medical treatment because she properly reported a gradual injury. HCA countered that Ms. Cargile is not entitled to any workers' compensation benefits because she has not met her burden of proving her condition arose primarily out of her work. It specifically contended Ms. Cargile's proof is insufficient because she presented no medical opinion of causation.

2

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[1] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

Ms. Cargile testified she performed a great deal of repetitive typing and computer entry over the course of several years' work for HCA. The First Report of Injury shows HCA received notice on August 6, 2014, fewer than thirty days after Ms. Cargile's termination. (Ex. 8.)[2] The Court therefore finds Ms. Cargile gave HCA adequate notice of a gradual injury.

---

[1] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

[2] On cross-examination, Ms. Cargile answered a number of questions about a recorded statement she gave in August 2014. HCA implied that Ms. Cargile wrongfully failed to disclose her prior carpal tunnel syndrome and workers' compensation claim or gave misleading information about it. The Court notes Ms. Cargile's confusion appeared to be genuine, and she had very little recollection or understanding of the previous claim and settlement. Further, there appeared to be some confusion in her recorded statement regarding the correct identity of her employer at the time of her earlier claim, as she worked for three different companies – Perot, ARS, and ARX. None of this testimony is relevant, as HCA did not assert any defenses other than causation.

HCA correctly asserts that Ms. Cargile has not carried her burden of proving her injury arose primarily out of her employment. However, the missing element is medical causation, and a primary reason for this deficiency is HCA's failure to provide a medical panel once it received notice of the injury. Instead, HCA denied the claim on causation grounds with no medical opinion addressing the cause of Ms. Cargile's condition. The Court holds it is not necessary for Ms. Cargile to prove medical causation at this time in order to receive temporary medical benefits. Enforcing such a high burden would yield the unreasonable result of prohibiting Ms. Cargile from receiving medical care for her injuries without first securing an expert opinion on medical causation. *See McCord,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at 9-10.

HCA argues Dr. Weikert's note proves Ms. Cargile suffered no work injury. This argument is unpersuasive. HCA presented no proof that Dr. Weikert's opinion is more accurate or reliable than that of Dr. West. Further, the Court finds Dr. West's carpal tunnel diagnosis is more persuasive in light of the abnormal EMG and conduction studies performed by Dr. Graham. As for Dr. Weikert's opinion that "this as a new problem not related to her original pain and not related to her work specifically," the Court notes Perot asked Dr. Weikert to determine whether Ms. Cargile's current condition was related to her prior 2003 carpal tunnel claim. Under the circumstances, it is unclear whether Dr. Weikert was referring to Ms. Cargile's new claim when giving his opinion.

HCA also questions why Ms. Cargile's symptoms continued or worsened after she stopped working. While this might be a relevant question to ask an authorized physician, the question itself is not proof. Absent actual medical evidence, HCA cannot deny compensability based on its own questions of medical causation.

In the event Ms. Cargile's symptoms are related in some way to her prior work injury, HCA contends her claim constitutes a non-compensable increase in pain, pursuant to *Trosper v. Armstrong Wood Products, Inc.*, 273 S.W.3d 598 (Tenn. 2008). Setting aside the question of the applicability of *Trosper* under current law,[3] HCA presented no evidence that Ms. Cargile only suffered an increase in pain, rather than a compensable aggravation of a pre-existing condition. This is another issue requiring expert medical opinion.

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). Ms. Cargile has an injury. At this point, however, it is unclear from a medical standpoint whether the work caused the injury or aggravated a pre-existing condition. Ms. Cargile is entitled to

---

[3] *See Miller v. Lowe's Home Centers,* No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *9-12 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015).

an evaluation to determine whether her injury is an acute work-related injury, an aggravation of her pre-existing condition, or not work-related at all. The Court, therefore, finds HCA must provide Ms. Cargile with a medical evaluation.

Because HCA failed to furnish medical treatment after Ms. Cargile made her selection from the panel of physicians, she may return to Dr. Bell for the causation evaluation. If Dr. Bell is unwilling to treat Ms. Cargile as a workers' compensation patient, she may select the evaluating physician from the panel previously provided by HCA. If medical causation is established, HCA shall provide continuing, reasonable and necessary care, with Dr. Bell or the selected physician.

**IT IS, THEREFORE, ORDERED** as follows:

1. HCA shall schedule and pay for a medical evaluation by Dr. Brant Bell for the purpose of determining the medical causation of Ms. Cargile's bilateral hand condition. If Dr. Bell is unwilling to treat Ms. Cargile as a workers' compensation patient, the evaluation shall be performed by a doctor selected by Ms. Cargile from the panel of orthopedic physicians previously provided by HCA. In the event medical causation is established, HCA shall provide continuing, reasonable and necessary care with the selected physician as required by Tennessee Code Annotated section 50-6-204 (2014). Medical bills shall be furnished to HCA or its workers' compensation carrier by Ms. Cargile or medical providers.

2. This matter is set for an Initial (Scheduling) Hearing on December 3, 2015, at 9:00 a.m.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED** this the 4th day of November, 2015.

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Pamela Cargile
2. Records from Seven Springs Orthopaedics & Sports Medicine (Marked for identification only)
3. Records from Dr. David West
4. Records from Dr. Douglas Weikert
5. Records from Dr. Steven Graham
6. Records from Dr. Alan Bachrach
7. C-23 Notice of Denial
8. First Report of Injury
9. C-41 Wage Statement
10. C-42 Choice of Physician Form
11. 2004 SD1 Form
12. Letter from Suzanne Baker at Broadspire
13. October 16, 2015 Order and Benefit Review Report


Technical record:[4]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 4th day of November, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Pamela Cargile, Self-Represented | X | | | 1310 N. Rutherford Blvd Apt. I-129 Murfreesboro, TN 37130 |
| Catheryne Grant, Employer's Counsel | | | X | catherynelgrant@feeneymurray.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**